**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

_____

JEANELLE TICE                              :
                                           :     No.  2:25-cv-00200
        VS.                                :
                                           :     <u>JURY TRIAL DEMANDED</u>
GENESIS HEALTHCARE, INC. and    :
3590 WASHINGTON PIKE OPERATIONS:
LLC t/a BRIDGEVILLE            :
REHABILITATION & CARE CENTER    :

_____

## <u>CIVIL ACTION COMPLAINT</u>

COMES NOW, Plaintiff, Jeanelle Tice, by her counsel, complains of defendants, Genesis Healthcare, Inc. and 3590 Washington Pike Operations LLC t/a Bridgeville Rehabilitation & Care Center, as follows:


### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to the 42 U.S.C. Section 2000(e) et seq. of the Civil Rights Act of 1964 as amended and the Pregnancy Discrimination Act of 1978 (which was enacted to amend Title VII to prohibit sex discrimination on the basis of pregnancy) and the Pregnant Workers Fairness Act (which was enacted to amend Title VII to require employers to make reasonable accommodations for pregnancy, childbirth, and related medical conditions).  This Complaint has been filed within 90 days after issuance of a Notice of Right to Sue by the EEOC dated February 10, 2025.

PARTIES

2.  Plaintiff, Jeanelle Tice, is a woman and she resides at 109 Wilma Avenue, Steubenville, OH 43952.

3.  Defendant, Genesis Healthcare, Inc. (hereinafter "Genesis"), is a corporation with a principal place of business located at 101 E. State St, Kennett Square, PA 19348.

4.  Defendant, Washington Pike Operations LLC t/a Bridgeville Rehabilitation & Care Center (hereinafter "Bridgeville"), is a limited liability company with a place of business located at 3590 Washington Pike, Bridgeville, PA 15017, which is located in this judicial district in Allegheny County, PA.

5.  Defendant Genesis offers a variety of healthcare services in nearly 200 facilities across 17 states.

6.  At all times material hereto, defendant Genesis was the parent company of Defendant Bridgeville which operated one of defendant Genesis's healthcare facilities called "Bridgeville Rehabilitation & Care Center" which is located in this judicial district in Bridgeville, Allegheny County, PA (hereinafter "Bridgeville facility").

7.  In about December 2019, Plaintiff commenced employment with Defendant Genesis's facility in Follansbee, WV as a Unit Manager.

8.    Over the following five (5) years, Plaintiff was promoted several times.

9.    Plaintiff's last promotion was to the position of Director of Nursing at Defendant Genesis's Pittsburgh, PA facility, where she worked between February 2024 to July 2024.

10. Plaintiff assumed the roll of Director of Nursing at the Bridgeville facility starting in early July 2024.

11.  At all times material hereto, plaintiff was jointly employed by the Defendants in that the Defendants shared upper management personnel and employee policies.

12.  In about the end of July 2024, Plaintiff became pregnant, and her due date was and is April 30, 2025.

13.   In about October 2024, after learning her baby was healthy, Plaintiff notified Jessica Hollinsworth (female Nursing Home Administrator), and Isabella Harris (female Human Resources Director) that she was pregnant and that she expected to take eight (8) weeks of maternity leave starting in about mid-April 2025.

14.  In about October/November 2024 Josh Stone (male Market President) and Casey Hanlin (female Corporate Clinical Lead) met with Plaintiff at the Bridgeville facility and she let them know she was pregnant at that meeting, and Mr. Stone replied: "You know how this keeps happening right?"

15.  Mr. Stone was referring to Plaintiff's prior pregnancy while employed by Defendants wherein Plaintiff's daughter was born in September 2023, and she returned from maternity leave in December 2023.

16.  In mid-December 2024, Defendants started requiring the nursing management team, including Plaintiff, to cover patient care workers after the end of their management shifts.

17.  This requirement resulted in nursing management personnel to work sixteen (16) hours straight if they were unable to find coverage.

18.  Around the end of December 2024, Plaintiff complained to Ms. Hollinsworth that working these extended hours in addition to doing the more physically demanding direct patient care of a CNA or LPN would be difficult for her, given that she was then five (5) months pregnant, and plaintiff suggested that the Bridgeville facility obtain proper agency coverage in the building as an accommodation to the Plaintiff.

19.  During this same conversation, Plaintiff also reminded Ms. Hollinsworth that the Bridgeville facility needed agency coverage anyway because even with the management team providing coverage, the Bridgeville facility was still falling short of State and Federal staffing requirements.

20.  At that time, pursuant to Section 211.12(d)(4) of the Pennsylvania Department of Health Long Term Care Facility

Regulations (hereinafter "LTCF Regs"), Plaintiff, as Director of Nursing was responsible for methods for recommendations for the number and levels of nursing services personnel to be employed, and, despite Plaintiff's recommendations, Ms. Hollinsworth was well-aware that the Bridgeville facility was not in compliance with Section 211.12(f.1), which required 1 nurse aide per 11 residents, 1 LPN per 30 residents during the evening shift in addition to 1 RN— or total nursing staff of 23 for the 170 residents in the Bridgeville facility.

21. Thus, plaintiff is a "whistleblower" in that she possessed "… evidence of wrongdoing or waste while employed and [made] a good faith report of the wrongdoing or waste, verbally or in writing, to one of [her] superiors [(i.e., Ms. Hollinsworth)]. . ." pursuant to 43 P.S. Section 1422.

22. Ms. Hollinsworth reported back to Plaintiff that corporate was standing by the requirement that she cover any vacancies in direct patient care shifts after her regular work hours ended.

23. On January 8, 2025, Plaintiff reiterated to Ms. Hollinworth, when Plaintiff was well into her sixth (6th) month of Pregnancy that there is a "Pregnancy Act" which protects her from working these extensive hours, but Ms. Hollinsworth responded that: "There certainly is not!"

24.  On  January 8, 2025, Plaintiff reiterated to Ms. Hollinworth that Defendants were in violation of State and Federal staffing requirements for nursing facilities.

25.  Plaintiff never refused the mandate to work the shift after her management shift ended and she intended to continue to do so when necessary.

26.  However, on January 9, 2025, Christina Quinn (female Market Lead Assistant) told Plaintiff that she was suspended pending investigation related to an alleged incident which occurred in Ms. Hollinsworth's office the previous day—January 8, 2025.

27.  Plaintiff denied any wrongdoing and wrote a statement that her conversation with Ms. Hollinsworth on January 8, 2025, was limited to the unfair treatment she believed she was receiving as a pregnant woman and her reassertion that the Bridgeville facility was always understaffed in violation of both State and Federal law.

28.  On January 10, 2025, Ms. Quinn informed Plaintiff that she was being terminated because a witness alleged that Plaintiff's conversation with Ms. Hollinworth was purportedly so "loud" the witness had to close her door to work, and it was alleged that she was "hostile."

29.  The Defendants' proffered reason for suspending and terminating Plaintiff's employment was false and mere pretext

designed to mask the true discriminatory reasons for her termination.

30.   The true reasons why Plaintiff was suspended and terminated was because she was pregnant, because she requested an accommodation for her pregnancy and/or because she complained that Defendants were in violation of State staffing requirements for nursing facilities.

31.   Defendants and their agents acted at all times material hereto with their authority to hire, fire and/or discipline.

32.   Defendants' agents acted against Plaintiff in a bigoted, willful and malicious manner.

33.   Defendants' actions violated the Pregnancy Discrimination Act of 1978 and the Pregnant Workers Fairness Act.

34.   Defendants' actions violated the Whistleblower Law, 43 P.S. § 1421 (hereinafter "Whistleblower Law").

35.   Plaintiff was subjected to humiliation, embarrassment, and mental anguish as a consequence of her termination from employment with Defendants.

36.   Plaintiff thus seeks damages, including but not limited to, lost pay, lost benefits, compensatory damages for pain and suffering, punitive damages, and attorneys' fees and costs.

COUNT 1—PREGNANCY DISCRIMINATION
VIOLATION OF THE PREGNANCY DISCRIMINATION ACT OF 1978
AGAINST DEFENDANT GENESIS

37.  Plaintiff repeats paragraphs 1-36 as if more fully set forth herein.

38.   By and through its conduct, Defendant Genesis violated The Pregnancy Discrimination Act of 1978 and Title VII, by intentionally discriminating against plaintiff and terminating her employment either in whole or in substantial part because she was a pregnant woman.

WHEREFORE, Plaintiff demands judgment on Count 1 against Defendant Genesis and damages either individually, jointly and or severally in an amount to be determined by a jury for lost pay and benefits, pain and suffering, emotional distress, mental anguish, harm to reputation, punitive damages, costs, reasonable attorney's fees, and such other relief as the Court deems just and fair.

COUNT 2—PREGNANCY DISCRIMINATION
VIOLATION OF THE PREGNANCY DISCRIMINATION ACT OF 1978
AGAINST DEFENDANT BRIDGEVILLE

39.  Plaintiff repeats paragraphs 1-38 as if more fully set forth herein.

40.    By and through its conduct, Defendant Bridgeville violated The Pregnancy Discrimination Act of 1978 and Title VII, by intentionally discriminating against plaintiff and terminating her employment either in whole or in substantial part because she was a pregnant woman.

WHEREFORE, Plaintiff demands judgment on Count 2 against Defendant Bridgeville and damages either individually, jointly and or severally in an amount to be determined by a jury for lost pay and benefits, pain and suffering, emotional distress, mental anguish, harm to reputation, punitive damages, costs, reasonable attorneys' fees, and such other relief as the Court deems just and fair.

COUNT 3—PREGNANCY DISCRIMINATION
VIOLATION OF THE PREGNANT WORKERS FAIRNESS ACT
AGAINST DEFENDANT GENESIS

41.    Plaintiff repeats paragraphs 1-40 as if more fully set forth herein.

42.    By and through its conduct, Defendant Genesis violated The Pregnant Workers Fairness Act, by intentionally discriminating against the plaintiff and terminating her employment because she sought reasonable accommodation for her pregnancy.

43.   The accommodations requested by Plaintiff were: (1) to take maternity leave for eight (8) weeks; and (2) and to be relieved from the requirement to work 16 hours straight doing physically intensive duties during the second 8 hours to fill in for any nursing staff deficiency.

44.   The request for maternity leave was reasonable because it was covered by the FMLA and is thus required under law.

45.   The request to be relieved of filling in for a nursing staff shortage for 8 hours after her 8-hour management shift ended was reasonable given that Defendant Genesis was required to provide minimum staffing of nursing personnel pursuant to State regulations at the Bridgeville facility.

WHEREFORE, Plaintiff demands judgment on Count 3 against Defendant Genesis and damages either individually, jointly and or severally in an amount to be determined by a jury for lost pay and benefits, pain and suffering, emotional distress, mental anguish, harm to reputation, punitive damages, costs, reasonable attorney's fees, and such other relief as the Court deems just and fair.

COUNT 4—PREGNANCY DISCRIMINATION
VIOLATION OF THE PREGNANT WORKERS FAIRNESS ACT
AGAINST DEFENDANT BRIDGEVILLE

46.   Plaintiff repeats paragraphs 1-45 as if more fully set forth herein.

47.   By and through its conduct, Defendant Bridgeville violated The Pregnant Workers Fairness Act, by intentionally discriminating against the plaintiff and terminating her employment because she sought reasonable accommodation for her pregnancy.

48.   The accommodations requested by Plaintiff were: (1) to take maternity leave for eight (8) weeks; and (2) and to be relieved from the requirement to work 16 hours straight doing physically intensive duties during the second 8 hours to fill in for any nursing staff deficiency.

49.   The request for maternity leave was reasonable because it was covered by the FMLA and is thus required under law.

50.   The request to be relieved of filling in for a nursing staff shortage for 8 hours after her 8-hour management shift ended was reasonable given that Defendant Bridgeville was required to provide minimum staffing of nursing personnel pursuant to State regulations at the Bridgeville facility.

WHEREFORE, Plaintiff demands judgment on Count 4 against Defendant Bridgeville and damages either individually, jointly

and or severally in an amount to be determined by a jury for lost pay and benefits, pain and suffering, emotional distress, mental anguish, harm to reputation, punitive damages, costs, reasonable attorney's fees, and such other relief as the Court deems just and fair.

COUNT 5—RETALIATION
VIOLATION OF THE WHISTLEBLOWER LAW
AGAINST DEFENDANT GENESIS

51.   Plaintiff repeats paragraphs 1-50 as if more fully set forth herein.

52.   This action was instituted within 180 days of Plaintiff's termination from employment by Defendant Genesis.

53.   At all times material hereto, Defendant Genesis was an "employer" pursuant to the Whistleblower Law because it was funded through the Commonwealth of Pennsylvania and its Department of Human Services by way of Medicaid.

54.   Plaintiff complained of conduct by defendant Genesis' official and/or supervisory employee(s) which resulted in, and continues to result in, substantial abuse and misuse of funds and resources belonging to the Defendant Genesis, in that, it failed and continues to fail to hire adequate nursing staff for its Bridgeville facility.

55.   Such abuse and misuse of funds and resources belonging to the Defendant Genesis constitutes "wrongdoing" and/or "waste"

as defined pursuant to 43 P.S. Section 1422.

56.  Plaintiff's report of this waste to Ms. Hollinworth was a good faith report of "wrongdoing" as defined pursuant to 43 P.S. Section 1422, in that such abuse of authority by Defendant Genesis's upper management personnel violated minimum staffing requirements which are required to ensure patient safety in long-term nursing facilities.

57.  In fact, Plaintiff had a duty to report such misconduct pursuant to The Older Adults Protective Services Act (OAPSA) in Pennsylvania.

58.  Thus, plaintiff is a "whistleblower" in that she possessed "… evidence of wrongdoing or waste while employed and [made] a good faith report of the wrongdoing or waste, verbally or in writing, to one of [her] superiors …" pursuant to 43 P.S. Section 1422.

59. Plaintiff suffered, and may in the future suffer, lost pay as a consequence of Defendant Genesis's unlawful termination of Plaintiff in retaliation for reporting wrongdoing or waste.

60.  Plaintiff seeks attorney's fees and costs, and any other relief deemed proper by this Court.

WHEREFORE, Plaintiff demands judgment on Count 5 against Defendant Genesis and damages either individually, jointly and or severally in an amount to be determined by a jury for lost pay and benefits, pain and suffering, emotional distress, mental

anguish, harm to reputation, and reasonable attorney's fees, and such other relief as the Court deems just and fair.

COUNT 6—RETALIATION
VIOLATION OF THE WHISTLEBLOWER LAW
AGAINST DEFENDANT BRIDGEVILLE

61.  Plaintiff repeats paragraphs 1-60 as if more fully set forth herein.

62.  This action was instituted within 180 days of Plaintiff's termination from employment by Defendant Bridgeville.

63.  At all times material hereto, Defendant Bridgeville was an "employer" pursuant to the Whistleblower Law because it was funded through the Commonwealth of Pennsylvania and its Department of Human Services by way of Medicaid.

64.  Plaintiff complained of conduct by defendant Bridgeville's official and/or supervisory employee(s) which resulted in, and continues to result in, substantial abuse and misuse of funds and resources belonging to the Defendant Bridgeville, in that, it failed and continues to fail to hire adequate nursing staff for its Bridgeville facility.

65.  Such abuse and misuse of funds and resources belonging to the Defendant Bridgeville constitutes "wrongdoing" and/or "waste" as defined pursuant to 43 P.S. Section 1422.

66.  Plaintiff's report of this waste to Ms. Hollinworth was

a good faith report of "wrongdoing" as defined pursuant to 43 P.S. Section 1422, in that such abuse of authority by Defendant Bridgeville's upper management personnel violated minimum staffing requirements which are required to ensure patient safety in long-term nursing facilities.

67.   In fact, Plaintiff had a duty to report such misconduct pursuant to The Older Adults Protective Services Act (OAPSA) in Pennsylvania.

68.   Thus, plaintiff is a "whistleblower" in that she possessed "… evidence of wrongdoing or waste while employed and [made] a good faith report of the wrongdoing or waste, verbally or in writing, to one of [her] superiors …" pursuant to 43 P.S. Section 1422.

69. Plaintiff suffered, and may in the future suffer, lost pay as a consequence of Defendant Bridgeville's unlawful termination of Plaintiff in retaliation for reporting wrongdoing or waste.

70.   Plaintiff seeks attorneys' fees and costs, and any other relief deemed proper by this Court.

WHEREFORE, Plaintiff demands judgment on Count 6 against Defendant Bridgeville and damages either individually, jointly and or severally in an amount to be determined by a jury for lost pay and benefits, pain and suffering, emotional distress,

mental anguish, harm to reputation, and reasonable attorney's fees, and such other relief as the Court deems just and fair.

Date:  February 11, 2025

/s/ Samuel A. Dion

_____

Samuel A. Dion, Esq.
Dion & Goldberger
1845 Walnut Street
Suite 1199
Philadelphia, PA 19103
215-546-6033 (tel)
215-546-6269 (fax)
samueldion@aol.com (email)
Attorneys for Plaintiff